UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NOVA MILLER,<br><br>                    Plaintiff,<br><br>v.<br><br>LEMHI COUNTY, a political subdivision of the State of Idaho; JOHN JAKOVAC, in his official and individual capacity; RICHARD SNYDER, in his official and individual capacity; and ROBERT COPE, in his official and individual capacity,<br><br>                    Defendants. | Case No. 4:15-cv-00156-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE (DKT. 18, 22)** |

## INTRODUCTION

Pending before the Court are Plaintiff's Motion to Strike Criminal Records and Related Information (Dkt. 18) and Motion to Strike Inadmissible Documents and Statements (Dkt. 22), both filed in response to materials submitted by Defendants in support of their Motion for Summary Judgment (Dkt. 15). In the interest of avoiding delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the motion will be decided on the record and without oral argument.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 1**

Dist. Idaho L. Rule 7.1(d). Preliminarily, however, the undersigned notes that the Motion for Summary Judgment is pending for resolution by the presiding District Judge, who retains the discretion to modify the rulings contained in this decision should he conclude the undersigned committed error. 28 U.S.C. § 636(b)(1)(A).

## BACKGROUND

On May 7, 2015, Plaintiff Nova Miller filed her Complaint against Defendants Lemhi County and the Lemhi County Commissioners John Jakovac, Richard Snyder, and Robert Cope,[1] asserting claims for hostile work environment, gender discrimination, retaliation, and violation of procedural due process under state and federal law. (Dkt. 1.) Miller started working for Lemhi County as a scale operator at the Lemhi County landfill in 2004, and received a promotion to scale house supervisor in 2009. Miller alleges that, throughout her employment, she was subjected to harassment and discrimination by her coworkers.[2] *Id.* The County terminated Miller from her employment on December 17, 2013.

In October of 2013, a landfill employee reported to the Lemhi County Treasurer that he suspected Jack Miller, the landfill manager and Miller's husband since 2011, was involved in the theft of county property. (Dkt. 15-2 at 2.) Specifically, the employee reported that Jack Miller allegedly placed tires purchased by the county onto Miller's vehicle. *Id.* The Lemhi County Sheriff's Office started investigating the alleged theft. *Id.*

---

[1] The Defendants will be collectively referred to as the "County."

[2] Among other claims, Miller alleges she was subject to verbal abuse based on her gender, and that her coworkers refused to cover her bathroom breaks, instead suggesting she "pee in a cup." (Dkt. 1.)

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 2**

On October 31, 2013, Jack Miller admitted in writing that he purchased tires with county funds and retained cash received from recycling materials for personal use. *Id.*

On November 1, 2013, multiple undisputed events occurred: (1) the County issued Jack Miller a Notice of Proposed Termination and Suspension without Pay (Dkt. 15-7 at 144 – 49); (2) Commissioner Jakovac notified Miller that the County was suspending her from her employment, with pay, pending an investigation into her involvement with her husband's theft (Dkt. 15-2 at 3); (3) during this meeting with Jakovac, Miller reported her complaints of employment discrimination to him;[3] and (4) the County issued Miller a Notice of Suspension with Pay Pending Investigation based on "the theft of Lemhi County property admitted to by your husband, Jack Miller" (Dkt. 15-8 at 8 – 11).

On November 6, 2013, the County issued Jack Miller a Notice of Decision Regarding Personnel Action: Termination of Employment, based on his admission "to having committed theft of money and property belonging to Lemhi County," and the corroboration of the confession provided by the County Sheriff's Office.[4] Decl. Morton (Dkt. 15-7 at 150 – 51).

---

[3] Miller and Jakovac do not dispute that Miller reported her complaints to Jakovac at this time; however, the specific details of their conversation are in dispute. Miller alleges Jakovac made a statement demonstrating his prior knowledge of her discrimination complaints. (Dkt. 20-1, ¶ 15.) Further, she alleges that she followed county policy by making prior complaints to her supervisor Jack Miller, and that Jack Miller reported her complaints to Jakovac, who said if Miller continued complaining, she would be the one to go—not her coworkers. *Id.* at ¶ 16. In contrast, Jakovac asserts this conversation with Miller on November 1, 2013, was the first time he heard about Miller's complaints. (Dkt. 15-4, Ex. A.)

[4] According to Jakovac's deposition testimony, he met with Sheriff Bowerman and reviewed the evidence relating to Jack Miller's suspected criminal activity. (Dkt. 20-7 at 7.) While the deposition does not identify the date of the meeting, it appears it occurred before Jack Miller's employment was terminated on November 6, 2013. *Id.*

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 3**

The next day, Miller relinquished her keys to the County Clerk on November 7, 2013, and discussed her discrimination complaints while there; the Clerk followed up by sending Miller a copy of the County's complaint procedure. *Id.* at 79 – 81.

During the November of 2013 investigation into Miller's suspected involvement with Jack Miller's theft of county property, the County also initiated an investigation into Miller for alleged falsification of time cards and abusive conduct toward her fellow employees. (Dkt. 15-1.) In her Complaint, Miller alleges the supplemental investigation occurred as a result of statements and complaints made by the same coworkers Miller alleges discriminated against her.[5] *Id.* It is not indicated by the record, whether the County investigated Miller's discrimination claims. (Dkt. 20-7 at 3 – 4.)

On December 4, 2013, the County issued Miller a Notice of Proposed Personnel Action – Termination and Notice of Suspension without Pay Pending Decision, based on the County's determination that Miller: (1) engaged in abusive conduct toward fellow employees; (2) falsified time cards by claiming to work on days she was absent; and (3) engaged in criminal conduct because it is "apparent that you knew that tires for your vehicle were obtained using County funds." Decl. Morton (Dkt. 15-8 at 12 – 16).

On December 9, 2013, Miller's counsel sent the County a letter detailing, among other concerns, that: (1) Miller's employment position was already posted as a vacancy; (2) interviews were being held, (3) it appeared the County had already made a determination about Miller's employment status; (4) Miller was the victim of

---

[5] Miller asserts she initially made complaints about her coworkers' treatment of her to her then-supervisor, Jack Miller, at various times throughout her employment, and later complained to Jakovac directly on November 1, 2013. (Dkt. 20-1 at 3 – 4.)

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 4**

discrimination; and (5) reinstatement of Miller to her position and back pay were appropriate. *Id.* at 1 – 5. On December 17, 2013, following Miller's pre-termination hearing, the County voted to terminate her employment, effective 3:45 p.m. Decl. Counsel (Dkt. 15-4 at 35). On December 19, 2013, the County issued Miller a Notice of Decision Regarding Personnel Action: Termination of Employment for the following reasons: (1) "engaging in abusive conduct to fellow employees;" and (2) "participating in a scheme or deception designed to create incorrect personnel records by falsifying time sheets by claiming to have worked on days when you were absent from work." Decl. Morton (Dkt. 15-8 at 17 – 22). The County did not terminate Miller's employment for any alleged criminal conduct in connection with Jack Miller. *Id.*

On April 17, 2014, Jack Miller was arraigned in state district court in Lemhi County on criminal theft charges. On August 21, 2014, the State of Idaho and Jack Miller entered into a Plea Agreement, and on November 20, 2014, the state court entered an Order Withholding Judgment and Order of Probation. *Id.* at 25 – 35.

## STANDARD OF LAW

On summary judgment, to support a claim or defense, the party asserting that a fact cannot be established or is genuinely disputed must cite to particular materials in the record, including depositions, documents, affidavits or declarations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the adverse party can demonstrate that the other party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1)(B). An opposing party may object also that

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 5**

material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

With regard to motions to strike as a means of objecting to evidence submitted in support of or against a motion for summary judgment, the Advisory Committee Notes to the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure provide that a Rule 56(c)(2) objection "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments). Motions to strike are limited to pleadings, which are defined by Federal Rule 7(a) as "exhibits filed in support of, or in opposition to, a motion for summary judgment are not pleadings." *Shelton v. Reinke*, No., 2013 WL 1319630, at *11 (D. Idaho Mar. 28, 2013), aff'd, 585 F. App'x 359 (9th Cir. 2014). Accordingly, the motions to strike filed by Miller will be construed as objections to the Court's consideration of certain materials submitted by Defendants in support of their motion for summary judgment.

## DISCUSSION

### I.   Plaintiff's Motion to Strike Criminal Records and Related Information (Dkt. 18)

Miller filed two motions to strike. The first motion seeks to strike the records of criminal proceedings against Jack Miller and the Notices of Decision Regarding Personnel Action issued to Jack Miller. Further, Miller seeks to strike the related references to these documents in the memorandum the County filed in support of their

motion for summary judgment (Dkt. 15-1) and in their Statement of Undisputed Material Facts (Dkt. 15-2).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

### A.   Jack Miller's Criminal Records

Miller moves to strike Jack Miller's Plea Agreement (Dkt. 15-8 at 32 – 35) and Order Withholding Judgment and Order of Probation (Dkt. 15-8 at 25 – 31) on the following grounds: (1) relevancy; (2) impermissible character evidence; (3) impermissible and premature impeachment evidence; and (4) danger of unfair prejudice to Miller. The Court discusses each in turn.

#### 1.   *Relevancy—Fed. R. Evid. 401*

Miller argues that Jack Miller's criminal records are not relevant to her claims in this case and have been incorporated into the record by the County in an effort to establish guilt by association with her husband. Further, she argues that the County has made no argument connecting Jack Miller's criminal records to her employment discrimination claims in this lawsuit. The County argues that proof Jack Miller pleaded guilty to criminal charges stemming from the alleged theft of county property demonstrates that the County's investigation into Miller was justified, and thus, is relevant to its defense. Further, the County contends the criminal records provide context and background regarding the reasons for the initial suspension and investigation into Miller, and proves her termination was not the product of unlawful retaliation.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 7**

The relevancy of the relationship between the evidence and the claims and defenses of the parties is determined on a case-by-case basis:

> Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Does the item of evidence tend to prove the matter sought to be proved? Whether the relationship exists depends upon principles evolved by experience or science, applied logically to the situation at hand. James, Relevancy, Probability and the Law, 29 Calif.L.Rev. 689, 696, n. 15 (1941), in Selected Writings on Evidence and Trial 610, 615, n. 15 (Fryer ed. 1957). The rule summarizes this relationship as a "tendency to make the existence" of the fact to be proved "more probable or less probable.

Fed. R. Evid. 401 advisory committee's note.

The County's argument fails to establish a logical relationship between Jack Miller's criminal records and the County's justification for its initial investigation of Miller in November of 2013, and the termination of her employment.  First, the criminal proceedings documented in these records did not begin until some four months after Miller's employment was terminated. Second, the state court accepted Jack Miller's guilty plea per the written plea agreement nine months after the investigation of Miller was initiated. Finally, the state court did not enter its Order Withholding Judgment and Order of Probation until eleven months following the termination of Miller's employment.

Prior to initiating its investigation into Miller, the County was aware of only the written admission of theft made to the Sheriff's office by Jack Miller. The County's attempt to rely upon what it learned long after Miller's employment was terminated, as justification for its actions during its investigation and termination of her employment,

does not make the documents relevant to what the County knew at the time of the
investigation of Miller. These records, although appearing authentic, do not tend to prove
a fact of consequence—what the County actually knew at the time it began its initial
investigation of Miller—which purportedly justified the actions the County took with
regard to her employment. Accordingly, under Fed. R. Evid. 401, the criminal records are
not relevant to Miller's claim of discrimination and retaliation, or the County's defenses.
The objection to the Court considering the same in connection with motion for summary
judgment will be sustained.

### 2.   *Character Evidence—Fed. R. Evid. 404(b)*[6]

Miller alternatively argues that Jack Miller's criminal records are inadmissible
under Fed. R. Evid. 404(b), "because the County seeks to establish that, because Jack
Miller [admitted] to theft while working at the landfill, he similarly assisted Plaintiff with
her alleged time card fraud." (Dkt. 18 at 5.) Miller contends that the County's
introduction of Jack Miller's criminal records is an attempt to demonstrate conformity to
a specific action, which is prohibited under Fed. R. Evid. Rule 404(b). (Dkt. 18-1 at 2.)
Further, Miller argues that "the inclusion of the criminal information is an impermissible
circumvention of Rule 404, with the County seeking to impute Jack Miller's criminal

---

[6] Fed. R. Evid. 404, provides in pertinent part:

> (b) Crimes, Wrongs, or Other Acts.
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to
> prove a person's character in order to show that on a particular occasion the person acted
> in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible
> for another purpose, such as proving motive, opportunity, intent, preparation, plan,
> knowledge, identity, absence of mistake, or lack of accident.

actions to Plaintiff," and therefore, the criminal records and information should be excluded or stricken from the record. *Id.*

The County asserts the evidence was not submitted to prove Jack Miller acted in accordance with a particular character trait on a particular occasion, nor was it submitted to show he assisted with time card fraud or to impugn Miller's honesty and truthfulness through Jack Miller's unrelated actions. (Dkt. 19 at 4 – 5.) Instead, the County argues the evidence was submitted for another purpose—to prove that the County's initial investigation into Miller was justified and there was no unlawful retaliation. *Id.* at 5. But, the County misses the point—Jack Miller's criminal proceedings occurred long after the County's actions and decisions regarding Miller's employment. This objection will also be sustained and the records will not be considered in connection with the motion for summary judgment.[7]

### 3.   *Impeachment Evidence—Fed. R. Evid. 609*[8]

In addition to her other arguments, Miller raises the argument that, "because Jack Miller has yet to testify in this matter other than in his deposition, evidence of his prior

---

[7] Whether the records will be admissible at trial will be a separate consideration.

[8] Fed. R. Evid. 609 provides:

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>     (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>         (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>     . . .
>     (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

felony under Rule 609 for impeachment is premature." (Dkt. 18-1 at 2.) She further argues that, because Idaho Rule of Evidence 609(c)[9] prohibits the use of withheld judgments as convictions for purposes of impeachment, the County "should not be allowed to ignore the substantive purpose of a withheld judgment under Idaho law." *Id.* at 6. She maintains that, **"even if not premature and prohibited by Idaho law[,] Jack Miller's criminal information cannot be used for impeachment under Rule 609(a)(2) because his crime did not involve dishonesty or false statements as a required element under Idaho law." *Id.* at 2. "Further, the Ninth Circuit has rejected the crime of theft as involving dishonesty." *See United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982). (Dkt. 23 at 6.)

      The County argues that Rule 609 is **"inapplicable because the evidence was not submitted to attack Jack Miller's character." (Dkt. 19 at 6.) Instead, the County asserts the evidence was submitted to justify the County's initial investigation into Miller. *Id.* Alternatively, the County argues that, if Rule 609 is applicable at this time, Jack Miller's crime of grand theft did in fact involve a dishonest act or false statement, and "[e]vidence of the conviction therefore 'must be admitted' under Rule 609(a)(2)." *See United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982). (Dkt. 19 at 7.)

---

[9] Idaho Rule of Evidence 609 provides in part:

> (c) Withheld or Vacated Judgment; Pardon for Innocence. Evidence of a withheld judgment or a vacated judgment shall not be admitted as a conviction. Nor shall a conviction that has been the subject of a pardon, annulment or other equivalent procedure based on a finding of innocence be admissible under this rule.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 11**

The Court finds that, under Federal Rules of Evidence 1101 and 609, it is premature to take up this issue until and unless Jack Miller is called to testify at trial.

### 4.    *Prejudice—Fed. R. Evid. 403*[10]

Miller further argues "evidence of Jack Miller's criminal action is inadmissible under Rule 403 because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to Plaintiff, and is confusing and misleading." (Dkt. 18-1 at 8.) Because the Court has found already the records of the criminal proceedings have no probative value to resolving the motion for summary judgment, this objection is moot and needs not to be addressed unless raised at the time of trial if the records are offered by the County at that time.

### B.    Notices of Decision Regarding Personnel Action re: Jack Miller

Miller moves to strike two County personnel action documents issued to Jack Miller: (1) Notice of Proposed Termination and Suspension without Pay, dated November 1, 2013; and (2) Notice of Decision Regarding Personnel Action: Termination of Employment, dated November 6, 2013. (Dkt. 15-7 at 144 – 51.) However, Miller does not make any specific arguments about these documents or why they are not admissible. (Dkt. 18-1.) Instead, Miller makes her arguments in the second motion to strike.

---

[10] Fed. R. Evid. 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 12**

Therefore, the Court will address these objections below, in its discussion of Miller's second motion to strike.

### C.    Defendants' Statement of Undisputed Material Facts

In the first motion, Miller also requests the Court to strike five paragraphs from Defendants' Statement of Undisputed Material Facts ("Statement") on relevancy grounds. (Dkt. 15-2.)

#### 1.    *Paragraphs 6 and 8*

Defendants included in paragraph 6 of their Statement that "[t]he Sheriff developed evidence that Jack Miller had in fact pocketed over twenty thousand dollars in proceeds from the sale of County recyclables and that he had also used County funds to purchase tires for plaintiff's truck." *Id.* There is no citation to the record in support of this alleged fact. However, this $20,000 figure appears to come from the Affidavit of Probable Cause which the Court finds is not admissible for reasons explained below in connection with Miller's second motion to strike. (Dkt. 15-7 at 68.)

In paragraph 8 of the Statement, the County asserts that: "Plaintiff exercised her right to remain silent and denied any knowledge of the crimes. She was never criminally charged." (Dkt. 15-2.) Again, there is no citation to the record to support this alleged fact.

Miller disputes Defendants' version of these two purported facts, and filed a Statement of Disputed Facts. (Dkt. 20-1.) Upon review of Miller's objections and the record, the Court finds these two paragraphs do not accurately reflect information the County had been provided by the Sheriff's Office at the time the County initiated its

investigation of Miller. Furthermore, paragraph 8 is not supported by the record.[11]

Accordingly, Miller's objections to paragraphs 6 and 8 in Defendants' Statement will be

sustained.

### 2.    *Paragraphs 7 and 10*

Miller next moves to strike paragraphs 7 and 10 in the Defendants' Statement that,

"[o]n October 31, 2013, [Jack] Miller admitted to the Sheriff that he kept the County's

recycling proceeds and that he also charged the County for tires purchased for plaintiff's

vehicle." (Dkt. 15-2.) Further, that "[t]he criminal investigation prompted the County to

investigate whether Nova Miller was involved with her husband/supervisor's theft." *Id.*

These paragraphs appear to recite what the County learned from the Sheriff's

office prior to initiating the investigation of Miller. The County's knowledge regarding

Jack Miller's alleged theft and the possibility of Miller's involvement in it is a fact of

consequence when determining whether Miller's termination was the product of unlawful

retaliation. Therefore, these paragraphs may be considered in connection with the motion

for summary judgment and Miller's objections to paragraphs 7 and 10 will be overruled.

### 3.    *Paragraph 9*

Miller also moves to strike the County's purported undisputed fact in paragraph 9

of Defendants' Statement that "Plaintiff's husband was suspended without pay on

October 31, 2013. He did not dispute the allegations against him and was discharged

---

[11] Contrary to the County's assertion, Sheriff Bowerman's report, dated November 4, 2013, stated that Miller invoked her constitutional right to an attorney, not her right to remain silent. (Dkt. 15-8 at 73.)

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 14**

from his employment on November 6, 2013. He later pleaded guilty to grand theft." *Id.* at ¶ 9.

The first and second sentences in this paragraph are relevant, as they are supported by the record of what the County knew in early November and are related to the notices of personnel action and the reason for initiating the investigation of Miller. Therefore, the objection to sentences one and two will be overruled.  However, the third sentence refers to Jack Miller's Plea Agreement; it is not relevant, and should not be considered in connection with the motion for summary judgment. Accordingly, the objection to sentence three will be sustained.

## II.    Plaintiff's Motion to Strike Inadmissible Documents and Statements (Dkt. 22)

Miller's second motion seeks to strike all documents and statements lacking relevance; relying on speculation or hearsay; and/or provided without foundation.[12]

Miller argues that "[f]acts presented in support of a motion for summary judgment must be presented in a form that would be admissible in evidence." (Dkt. 22-1 at 2) (internal quotations omitted). Miller misconstrues Federal Rule of Civil Procedure 56. The Rule states: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). At the motion for summary judgment stage, the focus is on the content of the evidence; if the evidence "may be presented in an admissible form at trial, a court may still consider that evidence." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

---

[12] The Court has created a chart of Miller's objections and the Court's rulings. *See infra* Objection Chart.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 15**

A.      **Material Relating to Jack Miller's Criminal Case and His Job with the County**

Miller moves to strike materials relating to Jack Miller's criminal case and employment with the County based on hearsay objections and the relevance arguments made in the first motion to strike.

In its discussion above, the Court found that the Order Withholding Judgment and the Plea Agreement are not relevant and should not be considered in connection with resolving the pending motion for summary judgment. Therefore, Plaintiff's objection to these two documents will be sustained.

The Court will next address Miller's relevance objections and discuss the hearsay objections regarding the personnel documents in turn below.

**1.** *Notices of Decision Regarding Personnel Action re: Jack Miller*

Miller moves to strike two County personnel action documents issued to Jack Miller: (1) Notice of Proposed Termination and Suspension without Pay, dated November 1, 2013; and (2) Notice of Decision Regarding Personnel Action: Termination of Employment, dated November 6, 2013. (Dkt. 15-7 at 144 – 51.)

Miller argues these notices are not relevant to her "hostile work environment, gender discrimination, or procedural due process claims." (Dkt. 18-1 at 3.) The County, on the other hand, argues that these documents are relevant because they prove the legitimacy of its initial investigation into Miller. (Dkt. 19 at 3.) As part of its defense, the County claims its termination of Miller's employment was not unlawful retaliation, and therefore these notices are relevant to proving the County had a legitimate reason to

initiate the investigation that eventually led it to terminate Miller's employment.[13] *Id.* at 4.

Here, during the decision-making process to investigate Miller regarding her knowledge and potential involvement with her husband's alleged theft of county property, the County knew Jack Miller made a written admission to the Sheriff on October 31, 2013. The County knew about the notice suspending Jack Miller effective November 1, 2013, because it issued the notice. Additionally, Miller was suspended from her employment on this same date, pending an investigation. Jack Miller's employment was terminated three days later, on November 4, 2013, just after the initial investigation of Miller began.

Under Rule 401 of the Federal Rules of Evidence, the Court finds both notices of personnel action regarding Jack Miller have relevancy to this action and the pending motion for summary judgment. This objection will, therefore, be overruled.

## 2. *Annual Performance Evaluation*

Miller reiterates her relevance arguments with regard to Jack Miller's Annual Performance Evaluation. Miller contends the evaluation, dated September 27, 2010, has the characteristics of a reflection as opposed to an evaluation. (Dkt. 22-1 at 7.) She argues that the only time the County cites this document in connection with its motion for summary judgment is in support of a statement that is unrelated to it: "Jack Miller did not dispute the allegations against him and was discharged on November 6, 2013." *Id.* The

---

[13] Again, the Court notes investigation of Miller's involvement with her husband's suspected theft was abandoned by the County shortly after its initial investigation began. The investigation turned to allegations against Miller of time card fraud and abusive conduct toward coworkers.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 17**

County fails to address this specific document in its response to Miller's second motion to strike, relying solely on its generalized arguments summarized by the Court above. (Dkt. 24.)

Because the County fails to demonstrate how Jack Miller's Annual Performance Evaluation in 2010 is relevant to the investigation of Miller, or to her claims or the County's defenses in this lawsuit, this evidence should not be considered in connection with the motion for summary judgment. This objection will, therefore, be sustained.

### 3. *Affidavit of Probable Cause*

Miller argues the Affidavit of Probable Cause filed in Jack Miller's criminal case lacks relevancy to her claims or the County's defense, because it is only probative of Jack Miller's activities, not the County's employment-related investigation of Miller. (Dkt. 22-1 at 5.) In response, the County again argues that it was submitted with its motion for summary judgment as justification for the initial investigation into Miller. (Dkt. 24 at 3.)

The Affidavit of Probable Cause was not signed by Sheriff Bowerman until November 18, 2013—weeks after the initial investigation into Miller began—and was not filed with the state court until February 3, 2014. Thus, it lacks timeliness relative to the initiation of the investigation into Miller. Moreover, the County has not offered any evidence as to when the County obtained the Affidavit of Probable Cause, or that it had it or the information in it, during its investigation of Miller and in connection with the termination of her employment. Accordingly, the objection to the Affidavit of Probable Cause will be sustained.

**B.      The County's Payroll Fraud Investigation Records re: Plaintiff;
         Notices of Personnel Action re: Jack Miller**

Miller next seeks to strike the County's payroll fraud investigation records into the
allegations against Miller and the Notices of Personnel Action regarding Jack Miller,
arguing the documents contain inadmissible hearsay.[14] (Dkt. 15-7 at 82 – 139, 144 – 51.)
She further argues that the documents are not records of a regularly conducted business
activity under Fed. R. Evid. Rule 803(6)(D), nor "public record[s] because the documents
indicate a lack of trustworthiness." (Dkt. 22-1 at 8.)

Here, the County argues that the records are not hearsay, because the contents are
not offered to prove the truth of the matter, but rather to "show the effect the statements
had on the [County]." (Dkt. 24 at 6.) The County contends further that, even if the
documents are hearsay, it will be able to present the evidence in an admissible form at
trial. "Namely, County employees could testify regarding their first-hand knowledge of
the information contained in the documents." *Id.* at 5.

Although the Court finds Miller's hearsay objections are well-founded, it is
unclear what portions, if any, of these records of the investigation of Jack Miller and
Miller were provided to the County either before the investigation of Miller began, during
the investigation, or before the pre-termination hearing for Miller. As explained above,
the evidence relevant to deciding the motion for summary judgment is integrally tied to
what information the County had at the time it made the decisions pertinent to Miller's

---

[14] Although Morton's declaration refers to these records as the "County's investigation into the payroll
fraud allegations against Plaintiff," they appear to be from both the criminal investigation of Jack Miller
and the employment investigation of Miller. (Dkt. 15-6 at ¶ 8.)

employment. For example, the information in records of the investigation by the Sheriff's office may not have been made known to the County until long after the employment decisions were made.

The County has made it clear that they relied, at least to a certain extent, on information from the Sheriff's office as the theft investigation unfolded. However, the investigation records submitted with Morton's declaration are too non-specific to conclude what was known, and when, by the County. Therefore, the objection to these records will be sustained.[15]

### C.   Declaration of Terri J. Morton

In her Complaint, Miller alleges the County failed to provide gender-appropriate restroom facilities or coverage for bathroom breaks so Miller could use the existing restroom located approximately 300 yards away from the scale house where she worked. (Dkt. 1.) As part of the County's defense, they claim once the port-a-potty was present near the scale house, this aspect of Miller's gender discrimination claim evaporated.

In her motion to strike, Miller seeks to strike Terri Morton's statement regarding the alleged placement date of a port-a-potty near the scale house at the landfill. (Dkt. 15-6 at ¶ 22.) Miller argues that the statement is too vague to be relevant—it is too much of a leap to extrapolate that, because the port-a-potty was present on one day, it was also present other days. (Dkt. 22-1 at 10.) Further, she argues that, because Morton based her testimony on a review of County records rather than on her own personal knowledge, the

---

[15] The fact that the County conducted an investigation and what it learned, generally, may be considered by the Court in connection with the motion for summary judgment.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 20**

statement constitutes impermissible lay witness opinion testimony under Federal Rule of Evidence 602. *Id.* at 10 – 11. Finally, Miller argues that Morton's statement lacks foundation, and should be stricken pursuant to Federal Rule of Evidence 1005. (*Id.* at 11; Dkt. 26 at 6.)

In response, the County argues that Morton's statement is relevant, relating directly to Miller's gender discrimination claims, and points to Miller's own evidence regarding the port-a-potty as support. (Dkt. 24 at 8.) Further, with respect to admissibility, the County claims it will be able to lay additional foundation to present the evidence in an admissible form at the time of trial.

Personal knowledge may be based upon review of business records rather than personal participation in activities. *Washington Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993); *Banga v. First USA, N.A.*, 29 F. Supp. 3d 1270, 1274 (N.D. Cal 2014). Here, Morton is the County Clerk and has stated in her Declaration that she bases her testimony about the port-a-potty placement date upon her review of County records. Accordingly, because Morton's statement regarding the port-a-potty placement may have relevancy to Miller's employment discrimination claims and the County likely can provide the evidence in an admissible form at trial, Morton's declaration may be considered in connection with the summary judgment motion to the extent the Court determines it has any weight. This objection by Miller will be overruled.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 21**

### D.      Payroll Master and Email Correspondence

There is no argument in the briefing in support of or opposition to Miller's objections to the Payroll Master (Dkt. 15-7 at 76 – 77) or Email Correspondence (Dkt. 15-8 at 6 – 7). Accordingly, the Court needs not address these objections.

## CONCLUSION

For the reasons explained above, the Court grants in part, and denies in part, Miller's motions to strike. The following chart summarizes the Court's rulings in a succinct fashion:

### Objection Chart

| Document | Docket location and all related references | Sustained | Overruled |
|---|---|---|---|
| Affidavit of Probable Cause signed by Sheriff Bowerman (re: Jack Miller, 11/18/2013) | Dkt. 15-7 at 62 – 75; Dkt. 15-1 at 2 – 3; Dkt. 15-2 at ¶¶ 4 – 10; Dkt. 15-6 at ¶ 5 | X | |
| Payroll Fraud Investigation Records (re: Jack Miller & Nova Miller, 10/2013 to 12/2013) It is unclear which investigations these are from—the records appear to be from both the criminal and employment investigations. | Dkt. 15-7 at 82 – 139 | X | |
| Annual Performance Evaluation (re: Jack Miller, 09/27/2010) | Dkt. 15-7 at 140 – 43; Dkt. 15-1 at 2 – 3; Dkt. 15-2 at ¶¶ 4 – 10; Dkt. 15-6 at ¶ 9 | X | |
| Notice of Proposed Termination and Suspension without Pay (re: Jack Miller, 11/01/2013) | Dkt. 15-7 at 144 – 49; Dkt. 15-1 at 2 – 3; Dkt. 15-2 at ¶¶ 4 – 10; Dkt. 15-6 at ¶ 10 | | X |
| Notice of Decision Regarding Personnel Action: Termination of Employment (re: Jack Miller, 11/06/2013) | Dkt. 15-7 at 150 – 51; Dkt. 15-1 at 2 – 3; Dkt. 15-2 at ¶¶ 4 – 10; Dkt. 15-6 at ¶ 11 | | X |
| Order Withholding Judgment and Order of Probation (re: Jack Miller, 11/20/2014) | Dkt. 15-8 at 25 – 31; Dkt. 15-1 at 2 – 3; Dkt. 15-2 at ¶¶ 4 – 10; Dkt. 15-6 at ¶ 18 | X | |

| | | | |
|---|---|---|---|
| Plea Agreement<br>(re: Jack Miller, 08/21/2014) | Dkt. 15-8 at 32 – 34;<br>Dkt. 15-1 at 2 – 3;<br>Dkt. 15-2 at ¶¶ 4 – 10;<br>Dkt. 15-6 at ¶ 19 | X | |
| Defendants' Statement of Undisputed<br>Material Facts | Dkt. 15-2 at ¶ 6, 8;<br>Dkt. 15-2 at ¶ 7, 10;<br>Dkt. 15-2 at ¶ 9, sentences 1 – 2;<br>Dkt. 15-2 at ¶ 9, sentence 3 | X<br><br><br>X | <br>X<br>X<br> |
| Declaration of Terri J. Morton | Dkt. 15-6 at ¶ 22 | | X |

# ORDER

## NOW THEREFORE IT IS HEREBY ORDERED:

1) Plaintiff's Motion to Strike (Dkt. 18) is **GRANTED in part and DENIED in part**, as explained above.

2) Plaintiff's Motion to Strike (Dkt. 22) is **GRANTED in part and DENIED in part**, as explained above.

Dated: **March 30, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO STRIKE - 23**