UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NOVA MILLER,<br><br>                  Plaintiff,<br><br>   v.<br><br>LEMHI COUNTY, a political subdivision of the State of Idaho; JOHN JAKOVAC, in his official and individual capacity; RICHARD SNYDER, in his official and individual capacity; and ROBERT COPE, in his official and individual capacity,<br><br>                  Defendants. | Case No. 4:15-CV-00156-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above entitled matter is Defendants' Motion for Summary Judgment. (Dkt. 15.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

For the reasons set forth below, the Court grants the Motion in part and denies the Motion in part. The Court grants the Motion with regard to the federal and state procedural due process claims and denies the Motion with regard to Plaintiff's hostile work environment, gender discrimination, and retaliation claims under both Title VII of the Civil Rights Act and the Idaho Human Rights Act ("IHRA").

# BACKGROUND

This employment law case was filed by Plaintiff Nova Miller. Defendants are Lemhi County and the Lemhi County Commissioners, John Jakovac, Richard Snyder, and Robert Cope, in their individual and official capacities (collectively, "Defendants").

Plaintiff began working as a scale operator for the Lemhi County landfill in 2004. (Dkt. 1, Dkt. 3.) She was the first woman to work at the landfill and alleges her co-workers began harassing her because of her gender shortly after her start date. (Dkt. 20-13, ¶¶ 2, 4-6, 10.)

In approximately October 2009, Plaintiff was promoted to scale house supervisor. (Dkt. 1, Dkt. 3.) Plaintiff alleges the harassment increased after her promotion because the male employees refused to take directions from a woman. (Dkt. 20-5, pp. 10-11; Dkt. 20-13, ¶ 13.)

Specific examples of the alleged harassment include the following conduct by the male employees of the Lemhi County landfill:

- Refusing to answer their radios and phones when Plaintiff attempted to contact them for work purposes;

- Refusing to help Plaintiff with her work duties;

- Refusing to acknowledge Plaintiff;

- Refusing to cover Plaintiff for her lunch or bathroom breaks;

- Making comments to the public that Plaintiff did not do what she was told and was lazy;

- Referring to Plaintiff as the "cardboard bitch" because of her job assignment to bail cardboard; and

- When Plaintiff was promoted to scale house supervisor, Plaintiff's male co-workers made repeated statements that they did not want to work for a woman and would not follow her directions.

(Dkt. 1; Dkt. 20-13, ¶¶ 5-6.)

Plaintiff states that she complained about this behavior orally and in writing directly to her supervisor, Jack Miller, who reported to the Lemhi County Commissioners. (Dkt. 20-5, p. 11.) Plaintiff estimates that she had copies of over ten written complaints saved in a physical file at the scale house but that file disappeared after she was placed on administrative leave. (Dkt. 20-13, ¶¶ 3-8.) Plaintiff's supervisor told her that he had spoken with the County Commissioners about the alleged harassment, and they would fire her if she continued to complain about the conditions at work including the other employees. *Id.*

Plaintiff also applied for other positions within the County in an attempt to obtain employment free of the harassment and discrimination. (Dkt. 20-5, p. 13; Dkt. 20-13, ¶ 10.) The County denied these applications. *Id.*

Plaintiff's supervisor throughout her tenure with the Lemhi County landfill was Jack Miller, the Lemhi County landfill manager and a non-party in these proceedings. Plaintiff began dating Jack Miller in 2009 and married him in 2011. (Dkt. 15-2, ¶¶ 2-3.)

In October 2013, a landfill employee reported to the Lemhi County Treasurer that he suspected Jack Miller was involved in a theft of county property. (Dkt. 15-2, ¶ 4.) Specifically, the employee reported that Jack Miller placed tires purchased by the county onto Plaintiff's vehicle. *Id.*

The Lemhi County Sheriff's Office started investigating that alleged theft and on October 31, 2013, Jack Miller admitted that he purchased tires with county funds and retained proceeds from the sale of county recyclables. (Dkt. 15-2, ¶ 7.) He was suspended without pay effective the next day and discharged one week later. (Dkt. 15-7, pp. 145-151).

On November 1, 2013, Commissioner Jacovak hand-delivered a Notice of Suspension with Pay Pending Investigation informing Plaintiff that the County was suspending her from employment pending an investigation into her involvement in her husband/ supervisor's misconduct. (Dkt. 15-2, ¶¶ 10-11.) During that meeting, Plaintiff reported her complaints of discrimination directly to Commissioner Jacovak. (Dkt. 15-4, pp. 11-13.) According to Plaintiff, Jakovac made a statement at that meeting evidencing his prior knowledge of her discrimination complaints. (Dkt. 20-5, p. 13.) More specifically, he stated, "As bad as it was with Jack there for you, how bad do you think it would be with him gone?" (Dkt. 20-5, p. 13.) Jakovac claims this was the first he heard of the alleged harassment. (Dkt. 15-4, p. 11.)

The November 1, 2013 Notice states that the pending investigation related to Plaintiff's "acts or omitted acts, statements, etc. in relation to and including, but not limited to, the following: The theft of Lemhi County property admitted to by your husband, Jack Miller." (Dkt. 15-8, p. 9.) During that investigation into Plaintiff's role in her husband/ supervisor's criminal activity, several landfill employees provided statements and complaints indicating that Plaintiff falsified her time sheets, conducted personal business on county time, and treated other employees badly. (Dkt. 15-2, ¶ 12.)

On November 7, 2013, Plaintiff met with the County Clerk and discussed her discrimination concerns. (Dkt. 20-5, p. 12.) The Clerk followed up by sending Plaintiff a copy of the County's discrimination procedure. *Id.*

There is no indication from the record that Lemhi County followed up with an investigation of Plaintiff's complaints of harassment either before or after November 2013. (Dkt. 20-1, ¶ 27.)

On December 4, 2013, Lemhi County issued a Notice of Proposed Personnel Action- Termination and Notice of Suspension without Pay Pending Decision. (Dkt. 15-8, pp. 13-15.) The Notice states that the County received information that Plaintiff had violated the Lemhi County Personnel Policy in three ways: (1) "[e]ngaging in abusive conduct to fellow employees; (2) "falsifying time sheets by claiming to have been working on days you were absent from work . . . includ[ing] the following days in 2013: July 17, 29, 30, September 3, October 3, 8, [and] 9; (3) "[e]ngaging in criminal conduct by accepting property belonging Lemhi County, i.e. it is apparent that you knew that tires for your vehicle were obtained using County funds." (Dkt. 15-8, p. 14.)

On December 9, 2013, Plaintiff responded to the Notice through her attorney. (Dkt. 15-8, pp. 3-5.) In this letter, Plaintiff informed Defendants that she believes she has been the target of unlawful discrimination and her male co-workers were asserting false complaints against her in an effort to have her fired. (Dkt. 15-8, p. 4.)

On December 17, 2013, Defendants held a pretermination hearing. (Dkt. 15-2, ¶ 23; Dkt. 16.) Plaintiff attended with counsel and her husband, Jack Miller who testified that he approved Plaintiff's timecards accurately and based on his personal knowledge of

Plaintiff's work activities. (Dkt. 15-2, ¶ 23; Dkt. 16.) Immediately following the hearing, the Commissioners voted unanimously to terminate Plaintiff's employment based on the falsified time card and abusive behavior allegations. (Dkt. 15-2, ¶ 24.) The County's decision was not based on Plaintiff's alleged knowledge or participation in her husband/supervisor's criminal activity.

At the time she was terminated, Plaintiff was the only Lemhi County employee certified for landfill management and was the likely replacement for Jack Miller. (Dkt. 20, p. 2; Dkt. 20-5, p. 13.) Plaintiff alleges that the decision to terminate her employment was based on false allegations of her co-workers, resulted from their gender animus against her, and also constituted retaliation for her reports of sexual harassment and discrimination. (Dkt. 1, Dkt. 20.) In addition, Plaintiff alleges that the process the county followed in terminating her employment violated federal and state procedural due process guarantees. (Dkt. 1, Dkt. 20.)

Defendants argue that Plaintiff was terminated for cause, though no cause was required. (Dkt. 15, Dkt. 25.) Defendants also argue that Plaintiff was afforded due process, though she had no property interest in need of protection. (Dkt. 15, Dkt. 25.)

## PROCEDURAL HISTORY

On May 7, 2015, Plaintiff filed a Complaint and Demand for Jury Trial. (Dkt.1.) Plaintiff's claims include the following: (1) hostile work environment in violation of Title VII and the IHRA; (2) gender discrimination in violation of Title VII and the IHRA; (3) retaliation in violation of Title VII and the IHRA; and (4) violation of procedural due process under the United States Constitution and the Idaho Constitution. *Id.*

On August 22, 2016, Defendants filed the instant Motion for Summary Judgment (Dkt. 15). Plaintiff filed an opposition brief, as well as two motions to strike objecting to certain evidence submitted by the Defendants in support of their motion. (Dkts. 18, 20, 22.) The motions to strike were referred to United States Magistrate Judge Candy W. Dale for decision. (Dkt. 12.) On March 30, 2017, Judge Dale issued a decision granting in part and denying in part both of Plaintiff's motions to strike. (Dkt. 27.)

Plaintiff's first motion to strike relates to records of criminal proceedings, certain statements of facts set forth in Defendant's Statement of Undisputed Material Facts, and records of personnel action against Jack Miller. (Dkt. 18.) The United States Magistrate Judge's decision to grant in part and deny in part this motion is well-reasoned. (Dkt. 27.) Accordingly, the Court adopts that decision and has not considered the following evidence in determining Defendants' summary judgment motion: (1) evidence related to Jack Miller's criminal convictions, which occurred months after the decision to terminate Plaintiff's employment and (2) Paragraphs 6, 8, and line three of Paragraph 9 of Defendant's statement of facts on the basis that they either relate to facts developed months after the decision to terminate Plaintiff's employment and/or lack evidentiary support.

Plaintiff's second motion to strike relates to various documents and statements she argues are inadmissible on the basis of relevance, speculation, hearsay, or foundation. (Dkt. 22.) Again, the United States Magistrate Judge's decision to grant in part and deny in part this motion is well-reasoned and the Court adopts that decision as its own. (Dkt. 27.) Consistent with that decision, in determining Defendants' summary judgment motion, the Court has not considered the following: (1) the Order Withholding Judgment and Plea

Agreement in Jack Miller's criminal case; (2) Jack Miller's annual performance evaluation; (3) the Affidavit of Probable Cause filed in Jack Miller's criminal case; and (4) the payroll fraud investigation records.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

"[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). "The mere existence of a scintilla of evidence in support of the nonmoving party's position" is not sufficient; this party must

---

[1] The fact the County conducted an investigation, who was involved in that investigation, and what was learned, generally, is properly considered by the Court in connection with the summary judgment motion.

present probative evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

"[S]ummary judgment is singularly inappropriate where credibility is at issue." *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978). It is not the Court's role to determine on summary judgment which witness is more believable. *See Nelson v. City of Davis*, 571 F.3d 924, 928-29 (9th Cir. 2009) (reversing grant of summary judgment where court credited conflicting version of events in deposition testimony). Instead, the Court must also draw all "justifiable inferences" in the non-moving party's favor and "deny summary judgment if any rational trier of fact could resolve an issue in favor [of the non-moving party]." *Id.* at 927.

## DISCUSSION

The federal and state hostile work environment, gender discrimination, and retaliation claims are addressed together, because claims brought under the IHRA are analyzed in the same manner as claims brought under their equivalent federal statutes. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888 n.4 (9th Cir. 1994). Similarly, the federal and state procedural due process claims are also addressed together, because procedural due process protections are the same under the Idaho Constitution and the United States Constitution. *See Bell v. Idaho Transp. Dept.*, 262 P.2d 1030, 1036 (Idaho Ct. App. 2011).

## 1.    Hostile Work Environment Claims

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Sexual harassment is a form of sex

discrimination" and "[b]y tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment in violation of Title VII." *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001).

Defendants argue that Plaintiff's hostile work environment claims fail as a matter of law, because: (1) the allegations are insufficient to support a hostile work environment claim; (2) there is no evidence that the conduct alleged was motivated by gender animus; (3) there is no evidence that Plaintiff's employer knew about the alleged harassment; and (4) the *Ellerth/Faragbher* affirmative defense operates as a bar to Plaintiff's claims. (Dkt. 15-1, pp. 5-11.) In addition, Defendants argue that the allegations regarding inadequate bathroom facilities are too remote in time to support her claims. (Dkt. 15-1, p. 9.)

### A.     *Sufficiency of Allegations*

To support a hostile work environment claim, Plaintiff must demonstrate that the conduct she experienced was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

> Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII. However, the harassment need not cause diagnosed psychological injury. It is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position.'

*Id.* (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994) (citations omitted).

The plaintiff "must show that the work environment was both subjectively and objectively hostile." *Id.* Subjective testimony depends on the plaintiff's testimony and whether the plaintiff, by her conduct, indicated that the harassment was unwelcome. *Id.; Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 872 (2001). The objective standard is based on the perspective of a reasonable person. *Nichols*, 256 F.3d at 872.

In determining whether the work environment is objectively hostile or abusive, courts are directed to look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest*, 360 F.3d at 1113 (citing *Nichols*, 256 F.3d at 872). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Nichols*, 256 F.3d at 872 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

In this instance, the Court finds the facts in the record are sufficient to submit this issue to the jury. Drawing all reasonable inferences in Plaintiff's favor, a jury could find that Plaintiff's work environment was subjectively and objectively hostile enough to alter the terms and conditions of Plaintiff's employment at the landfill.

From a subjective standpoint, Plaintiff filed contemporaneous complaints detailing the behavior of her male co-workers and supporting a finding that the behavior was both unwelcome and harassing to Plaintiff. (Dkt. 20-13, ¶ 5, 20-15, 20-16). In addition, Plaintiff

describes that she often found herself in tears before going to work and wanted to quit her job because of the hostile treatment directed at her. (Dkt. 20-13, ¶ 10.)

From an objective standpoint, a reasonable person could also find the behavior of the male employees at the landfill was sufficiently hostile to alter the conditions of Plaintiff's employment. This includes: (1) refusing to provide Plaintiff with bathroom breaks so she could use the indoor facilities available for women; (2) refusing to provide Plaintiff with lunch breaks; (3) failing to respond to her calls for assistance on the radio; (4) refusing to follow her direction; (5) speaking about her in a derogatory manner to the public; (6) referring to her as a "cardboard bitch"; (7) and telling her directly that they would not take direction from a woman. (Dkt. 20-13, ¶¶ 5-6). This behavior allegedly occurred on a weekly and sometimes daily basis.

### B.    Evidence of Gender Animus

"Sexual harassment is actionable under Title VII to the extent it occurs 'because of' the plaintiff's sex." *Nichols*, 256 F.3d at 874 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998)). Defendant argues that Plaintiff's claim fails because there is no evidence that the conduct she complained of was motivated by gender animus as opposed to ordinary dislike.

The Court finds there is sufficient evidence in the record to support a finding that the male employees at the landfill were motivated by gender animus. From the beginning, the male landfill employees told Plaintiff the landfill had never had a female employee and she would not last long. (Dkt. 20-5, p. 10). They also told her that they would not work for

a woman, even after she became a supervisor. *Id.* This evidence is disputed by the county but is sufficient to survive summary judgment.

## C.    *Employer Knowledge*

"[A]n employer cannot be held liable for misconduct of which it is unaware." *Swenson v. Potter*, 271 F.3d at 1192. Because Title VII is direct and not derivative, "[a]n employer is responsible for its own acts or omissions, not for the co-workers harassing conduct." *Id.* 1191-92.

> If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have 'adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy.'

*Id.* at 1192 (quoting *Faragher v. City of Boca* Raton, 524 U.S. 775, 789 (1998)).

Defendants argue that they cannot be held liable for the alleged conduct of the landfill employees, because they had no knowledge of it. The Court finds the Plaintiff has set forth sufficient evidence to create a dispute of fact on this subject.

First, Plaintiff testified that she reported and provided approximately ten written complaints to her direct supervisor/ husband who was the landfill manager and reported directly to the county commissioners. (Dkt. 20-5, pp. 10, 15; Dkt. 20-13, ¶¶ 8-9.) Second, Plaintiff's supervisor informed her that he reported her complaints to the county commissioners. (Dkt. 20-5, p. 11.) Third, when Plaintiff spoke with Commissioner Jacovak, he made a statement that could be construed to reflect prior knowledge of the

alleged harassment. This evidence is disputed by Lemhi County but is sufficient to survive a motion for summary judgment.

### D.    Application of the Ellerth/Faragher Defense

"There is nothing remarkable in the fact that claims against employers for discriminatory employment actions with tangible results, like hiring, firing, promotion, compensation, and work assignment, have resulted in employer liability once discrimination was shown." *Faragher,* 524 U.S. at 790. In such situations, an employer is vicariously liable for a supervisor's conduct under basic agency principles.

However, in situations in which no adverse action is taken, the employer's vicarious liability is limited by application of the *Ellerth* and *Faragher* affirmative defense. *See Faragher*, 524 U.S. at 805; *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998). For the defense to apply, the employer must prove, by a preponderance of the evidence: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 137–38 (2004) (citing *Ellerth,* 524 U.S. at 765 and *Faragher,* 524 U.S. at 807).

Defendants argue that they exercised reasonable care because the county had a written anti-harassment policy that defined harassment, set forth reporting procedures, stated that violator's would be disciplined, and precluded retaliation for filing complaints. (Dkt. 15-2, p. 11). Defendants further argue that Plaintiff unreasonably failed to avail herself of that policy. (Dkt. 15-2, p. 11.)

The Court finds that it cannot apply the *Ellerth/Faragher* affirmative defense as a matter of law given the above disputes of facts. The reasonableness of the employer and employee's conduct is best left for the jury to decide.

It is undisputed that Lemhi County has an anti-harassment policy. (Dkt. 15-7, pp. 43-49.) However, the Court cannot find, as a matter of law, that the policy alone reflects that Defendants exercised reasonable care to prevent and address sexually harassing behavior. Furthermore, there is evidence in the record to support a finding that Plaintiff followed that policy but her supervisor did not.

The Lemhi County anti-harassment policy identifies obligations for supervisors and employees and outlines a complaint procedure. (Dkt. 15-7, pp. 43-49). Supervisors are primarily responsible for enforcing the policy. "It is the responsibility of supervisors to enforce the policy." (Dkt. 15-7, p. 44.) Further, "[i]f a supervisor receives information that discrimination, unlawful harassment or retaliation might be occurring, he/she should follow the Complaint Procedures" set forth in the Policy. (Dkt. 15-7, p. 45.)

Employees are also responsible for ensuring the anti-harassment policy is followed. However, they do so by reporting alleged harassment and this specifically includes reporting harassment to a supervisor. "It is the responsibility of each and every employee to know this policy and to follow it." (Dkt. 15-7, p. 45.) Further, "[i]ndividuals who believe they have been discriminated against or unlawfully harassed have the primary obligation of informing their supervisor, Department Head, Human Resources Officer, or legal counsel for the County of the act of discrimination." (Dkt. 15-7, p. 45.)

The "Complaint Procedure" outlined in the Policy also allows for employees to report alleged discrimination or harassment to a supervisor. The policy states, "[a] person who believes . . . she has been unlawfully harassed, discriminated or retaliated against should report it to [her] supervisor, Department Head, County Clerk, or legal counsel for the county." (Dkt. 15-7, p. 47.) Again, the procedure emphasizes that it is the supervisor's responsibility to report any such complaint to a designated official. "If a supervisor becomes aware that unlawful harassment or discrimination is occurring . . . as a result of an employee coming forward, the supervisor should immediately report it to a designated official pursuant to this policy." (Dkt. 15-7, p. 47.) At that point, the Designated Official should initiate an investigation.

In this case, there is sufficient evidence in the record to support a finding that Plaintiff followed the policy by submitting detailed, written complaints to her supervisor. (Dkt. 20-5, pp. 10, 15; Dkt. 20-13, ¶¶ 8-9.) Thus, the Court cannot find, as a matter of law, that either: (1) Defendants exercised reasonable care to avoid harassment and eliminate it when it occurs or (2) the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. These disputes of fact as to both elements of the *Ellerth/Faragher* defense preclude its application on summary judgment.

### E.    *Providing for Bathroom Breaks*

Under the "continuing violation doctrine, events occurring outside the Title VII limitations period "may be considered as a basis for the claim so long as those events are part of an ongoing unlawful employment practice. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998). Plaintiffs may avail themselves of this theory "by

demonstrating that [the] claims are founded on a pattern or practice of employer conduct that continued into the relevant period of limitations." *Id.*

"A 'hostile work environment' occurs when there is a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment." *Id.* at 1108 (internal citations omitted). Thus, claims regarding the existence of a hostile environment typically involve allegations of continuing violations. *Id.*

The Court finds the allegations concerning the male employees at the landfill refusing to provide Plaintiff with bathroom breaks are relevant to her hostile work environment claim. Because she was not provided with bathroom breaks and refused to leave her post without a backup present, Plaintiff wet her pants on four occasions. (Dkt. 20-5, p. 9.) When she complained about the situation to her co-workers they told her to "poop in a garbage can" and "pee out behind a cardboard bale." (Dkt. 20-5, p. 10.)

While a bathroom facility was eventually provided, the general conduct at issue in Plaintiff's hostile work environment claim is the county employees' on-going treatment of Plaintiff over the entire scope of her employment at the landfill. The failure to provide bathroom breaks to the Plaintiff fits within the general pattern of conduct and is, therefore, probative of the hostile work environment claim.

## 2. Gender Discrimination Claims

To establish a *prima facie* gender discrimination claim, Plaintiff must demonstrate: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated her differently than similarly situated employees who do not belong to the same class. *See Godwin v. Hunt*

*Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). Defendant argues that Plaintiff cannot satisfy elements two and four, because she did not perform her work satisfactorily and she was terminated because she falsely reported her hours. (Dkt. 15-1, p. 12.) Plaintiff argues that any performance issues were fabricated by her co-workers as a pretext to have her fired and the entire timesheet fraud investigation was tainted by her co-workers' gender animus toward her.

### A.    *Plaintiff's Job Performance*

Clearly, Plaintiff's job performance is at the heart of this dispute. However, there are sufficient facts in the record to support a jury finding that Plaintiff performed her job satisfactorily. This evidence includes, but is not limited to, written performance evaluations. (Dkt. 20-14.) This is sufficient evidence to survive summary judgment in terms of the first element of Plaintiff's *prima facie* discrimination claim.

### B.    *Plaintiff's Treatment Compared to Male Employees*

Plaintiff contends the County caused her to suffer the following adverse employment actions, because of her gender: (1) allowed her to be subject to abusive comments based on her gender; (2) failed to investigate her complaints; (3) failed to provide Plaintiff with access to restroom facilities; (4) failed to keep her complaints confidential; (5) failed to prevent or stop retaliation against Plaintiff; and (6) ultimately discharged Plaintiff. (Dkt. 1, ¶ 52). The evidence of discriminatory animus includes but is not limited to direct comments from the male employees at the landfill who told Plaintiff she was the first female employee at the landfill, she would not last long, and they would not take orders from a woman. (Dkt. 20-5, pp. 10-11; Dkt. 20-13, ¶ 13.) This evidence is

sufficient to support a finding that Lemhi County treated Plaintiff differently than similarly situated employees who were men, the fourth element of a *prima facie* gender discrimination claim.

### C.    Timesheet Fraud as Pretext for Gender Discrimination.

Defendants also argue that Plaintiff cannot establish a gender discrimination claim, because the county had a legitimate reason for terminating her employment: timesheet fraud. Plaintiff argues such justification is pretext, because she can prove: (1) the County was more likely motivated by discriminatory reasons and (2) their justification is not credible. (Dkt. 20). *See Douglas v. Anderson*, 656 f.2d 528, 534 (9th Cir. 1981). Plaintiff offers sufficient evidence to create a triable issue of fact in both regards.

First, Plaintiff has set forth sufficient facts to support a finding that the County was motivated by discriminatory reasons. Plaintiff argues that the timesheet fraud was a pretext, nothing more than a fabricated story created by the male employees at the landfill who, motivated by gender animus, wanted to see her discharged rather than report to her as the next landfill manager. Because the county took adverse employment action based on the male employee's gender animus, the Commissioners decision to terminate Plaintiff's employment is tainted by gender animus and discriminatory intent.

Under the "cat's paw" doctrine[2], the animus of a supervisor, co-worker, or subordinate may be imputed to the employer even if the supervisor, co-worker, or

---

[2] The English idiom "cat's paw" refers to one who tricks another into doing his dirty work. The term is based on a fable about a monkey who persuades a cat to extract chestnuts from a fire, only to take the chestnuts from the cat leaving the cat with nothing but a pair of burnt paws. *See*

subordinate does not have actual decision-making power. *See Staub v. Procter Hosp.*, 562 U.S. 411, 422 (2011); *Poland v. Chertoff,* 494 F.3d 1174, 1182 (9th Cir. 2007). "Title VII may . . . be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus." *Poland*, 494 F.3d at 1182-83 (quoting *Galdamez v. Potter,* 415 F.3d 1015, 1026 n. 9 (9th Cir. 2005).

The Ninth Circuit further explains the doctrine as follows:

> [I]f a subordinate . . . sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process.

*Id.* at 1182. "Where . . . the person who exhibited discriminatory animus influenced or participated in the decisionmaking process, a reasonable factfinder could conclude that the animus affected the employment decision." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1039-40 (9th Cir. 2005).

Before Plaintiff was placed on administrative leave, no one had complained about her job performance. (Dkt. 20-7, p.8.) Moreover, the investigation into timesheet fraud was initiated by and directly involved the same male employees at the landfill who allegedly harassed Plaintiff on account of her gender. (Dkt. 15-7, pp. 86-107; Dkt. 20-1, ¶ 24.) There

---

*Staub v. Procter Hosp.*, 562 U.S. 411, 415, n. 1 (2011). "In the context of employment litigation, the fable serves as a cautionary tale to employers against the rubberstamping of a supervisor's recommendations." *Glynn v. City of Stockton*, 2016 WL 4009809, *11 n.2 (E.D. Cal. 2016).

is also evidence in the record to support a reasonable inference that these same co-workers got together to develop evidence of the time card fraud in an effort to avoid having Plaintiff take over as landfill manager, because they did not want to take orders from a woman. (Dkt. 20-1, ¶¶ 24-25.) This evidence supports Plaintiff's claim that the County was more likely motivated by discriminatory animus, as opposed to legitimate job performance reasons for discharging Plaintiff.

Second, Plaintiff has set forth evidence to demonstrate that the county's justification for her termination is not credible. Plaintiff offers a reasonably plausible explanation for every alleged missed day from work. (Dkt. 20-1, pp. 6-9; Dkt. 20-5; Dkt. 20-13.) In addition, both Plaintiff and her husband testified that the timecards are accurate. Jack Miller testified that he carefully reviewed Plaintiff's time cards and verified that she was working. (Dkt. 16).

Because the County did not have a time clock or other method of tracking time other than the employee time cards, the Court, like the County, is left with a simple credibility issue. Only the jury may determine the credibility of these witnesses and resolve competing narratives concerning Plaintiff's employment at the Lemhi County landfill.

## 3.   Retaliation Claims

To support a *prima facie* retaliation claim under Title VII, Plaintiff must demonstrate: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Just as in gender discrimination claims, if the employee makes a *prima facie* showing of retaliation, the burden then shifts to the employer to present legitimate reasons

for the adverse employment action and, if the employer carries its burden, Plaintiff must then demonstrate a genuine issue of material fact as to whether the reason advanced by the employer is pretext. *Id.*

Defendant argues that Plaintiff cannot establish the first or third element of a *prima facie* retaliation claim. Plaintiff argues that the protected activity she was engaged in was reporting gender-discriminatory and hostile work environment conduct to her supervisor and then, once she was placed on leave, directly to the Lemhi County Commissioners. In response, the County Commissioners terminated her employment- allegedly just as her supervisor told her they would if she kept complaining. (Dkt. 20-5, p. 11.)

### A.      *Involvement in a Protected Activity*

Defendants argue "Plaintiff's allegations of discrimination were not a protected activity because plaintiff was not subject to illegal discrimination." (Dkt. 15-1, p. 13.) The Court cannot make such a finding given the disputes of fact in the record. Reporting discriminatory conduct is an assertion of one's civil rights and a protected activity under Title VII. *Brooks*, 229 F.3d at 928. Thus, Plaintiff has set forth sufficient proof in support of this element of her retaliation claim.

### B.      *Causal Link Between Protected Activity and Adverse Employment Action*

Defendants argue there was no causal connection between the allegations and Plaintiff's termination, because Plaintiff was terminated "based upon evidence that she falsified her time cards and claimed pay that she had not earned." (Dkt. 15-1, p. 14.) Defendants have set forth sufficient evidence to support such a finding. However, as discussed above, Plaintiff has also set forth sufficient evidence supporting a finding that

such justification was pretext. This dispute of fact precludes summary judgment on the retaliation claim as a matter of law.

**4.     Procedural Due Process Claims**

To establish a violation of her procedural due process rights, Plaintiff must demonstrate: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) a lack of process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). Defendants argue Plaintiff did not have a property interest in her job and, in any event, was afforded due process. Defendants also argue that the Commissioners, in their individual capacities, are entitled to qualified immunity.

**A.     *Property Interest***

Plaintiff asserts a property interest in her continued employment with Lemhi County. Defendants argue that Plaintiff was an at-will employee and, thus, does not have the property interest necessary to support a due process claim.

For continued employment to constitute a protected property interest, a person must have a reasonable expectation or a "legitimate claim of entitlement" to the benefit of continued employment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Idaho law provides the relevant framework to determine whether Plaintiff had a reasonable expectation of continued employment or was an at-will employee.

The general rule in Idaho is that employment is presumptively at-will. *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380 (Idaho 2005). The at-will presumption is rebuttable by either an express of implied limitation upon a party's right to terminate the employment relationship. *Jenkins*, 108 P.3d at 388. An implied limitation exists when a reasonable

person would conclude from all the circumstances surrounding the relationship that both parties intended to limit the other party's right to terminate the relationship. *Id.* "Statements made and policies promulgated by the employer, whether in an employment manual or otherwise, may give rise to such an implied-in-fact agreement." *Bollinger v. Fall River Rural Elec. Co-op,* 272 P.3d 1263, 1269 (Idaho 2012).

Plaintiff does not allege a contractual right to continued employment. Rather, Plaintiff asserts a legitimate claim of entitlement to continued employment based on the "for cause" language in the Lemhi County Personnel Policy ("LCPP") (Dkt. 15-7, pp. 2-82). (Dkt. 20, p. 15.) The relevant language is outlined below.

First, the LCPP clearly states that during a 12-month introductory period, all Lemhi County employees are at-will employees:

> At any time during this twelve (12) month introductory period, including any extension of the introductory period, either the employee or Lemhi County may end the employment relationship in their respective discretion for any lawful reason, with or without advance notice. During the introductory period, employment is at-will.

(Dkt. 15-7, pp. 11, 13). Otherwise, the LCPP provides "regular employees" with "for-cause employment" described as follows:

> a. For-Cause Employment
>
> i) <u>Regular Employees.</u> Except as otherwise provided in this Policy, regular employees of Lemhi County will not be suspended without pay, demoted with an accompanying change in pay, or discharged from their positions for disciplinary purposes except for cause related to performance of their job duties or other violations of this policy. Cause shall be determined by the employee's supervisor/ elected official

and shall be communicated in writing to the employee when the employee's status is proposed to be changed.

ii) Only suspension without pay, demotion with a reduction in pay, or discharge for cause shall be subject to the opportunity to be heard with regard to any disciplinary procedure set forth in this personnel policy. . . .

(Dkt. 15-7, p. 20).

There are various exceptions to "for-cause" employment identified in the LCPP.

(Dkt. 15-7, pp. 21-22). None of these applies to the Plaintiff.

In addition to these specific provisions regarding "at-will" and "for-cause" employment, the LCPP contains a number of disclaimers provided in all caps on the cover page of the LCPP. These disclaimers make clear that the LCPP is not a contract:

THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH Lemhi County WILL BE VALID UNLESS IT IS EXPRESSLY APPROVED BY THE GOVERNING BOARD AND UNLESS IT IS SIGNED AND CONTAINS THE NAME OF THE SPECIFIC EMPLOYEE WHO WOULD BE BENEFITED/OBLIGATED BY THE CONTRACT.
. . . .
CHANGES TO THE POLICIES AND BENEFIT OFFERINGS OUTLINED IN THIS POLICY ARE SUBJECT TO CHANGE AT ANY TIME, WITHOUT PRIOR NOTICE.
. . . .
THIS POLICY IS NOT TO BE CONSTRUED AS A CONTRACT OF EMPLOYMENT AND IS NOT INTENDED TO SPECIFY THE DURATION OF EMPLOYMENT OR LIMIT THE REASONS FOR WHICH AN EMPLOYEE MAY BE DISCHARGED. THIS POLICY CREATES NO RIGHTS, CONTRACTUAL OR OTHERWISE, ON BEHALF OF EMPLOYEES OF THE COUNTY.

(Dkt. 15-7, p. 3.) Furthermore, there is also an acknowledgment signed by Plaintiff that essentially mirrors this disclaimer language and states the following:

I understand that it is my responsibility to read and review this Policy.

I understand that this Policy is not a contract and cannot create a contract.

I understand that I am obligated to perform my duties of employment in conformance with the provisions of this Personnel Policy manual and any additional rules, regulations, policies or procedures imposed by the department in which I work whether or not I choose to read the new Policy.

I understand that this Policy may be modified without prior notice to me.

I understand that should this Policy be modified that I will be provided with a copy of the modifications.

I understand that this Policy may be provided to me in either paper format or by electronic access.

(Dkt. 15-8, p. 24.)

Defendants argue that the LCPP's general disclaimer and acknowledgment essentially negate the for-cause language in the policy. However, notably missing from the disclaimer and written acknowledgement, is any specific reference to "at-will" or "for cause" employment. Rather, the disclaimer at issue in the LCPP simply disclaims any contractual obligations on behalf of the employer. In addition, the acknowledgment underscores the employees' obligation to perform their duties consistent with the LCPP. A reasonable person could interpret this provision consistent with the for-cause section of the LCPP. The employee must meet its obligations under the Policy or be terminated from employment is another way of saying Plaintiff can enjoy a reasonable expectation in her employment unless she engages in conduct inconsistent with the LCPP.

In sum, under the specific facts of this case, the Court finds that this general disclaimer cannot operate to void the more specific language in the LCPP regarding "at-will" and "for-cause" employment. *See Twin Lakes Vill. Prop. Ass'n, Inc. v. Crowley*, 857 P.2d 611, 617 ("It is well established that specific provisions in a contract control over general provisions where both relate to the same thing.").[3] In coming to this conclusion, the Court is aware of at least five cases from this district that address substantially similar county personnel policy language. *See Harms v. Jeffries*, 2013 WL 791452 (D. Idaho Mar. 4, 2013) (no property interest found); *Brown v. Valley County*, 2013 WL 1453368, *6-7 (D. Idaho Apr. 9, 2013) (property interest found); *Hollist v. Madison County*, 2014 WL 5089941, * 6 (D. Idaho Oct. 9, 2014), *decision clarified*, 2015 WL 733985 (D. Idaho Feb. 19, 2015) (property interest found); *Williams v. Madison County*, 2014 WL 6473284, * 9 (D. Idaho Nov. 18, 2014), *R &R adopted as modified*, 2015 WL 428053 (D. Idaho Feb. 5, 2015) (property interest found); *Timothy v. Oneida County*, 2017 WL 1100896, * 7 (D. Idaho Mar. 21, 2017) (no property interest found). These cases generally hold that a general disclaimer in a personnel policy can negate for-cause language found elsewhere in the policy. However, these cases are fact-specific and, at a minimum, require: (1) a contractual disclaimer; (2) discretionary language in the policy; and (3) a waiver form requiring an

---

[3] At most, the disclaimer language creates an ambiguity in the LCPP. Such an ambiguity must be resolved against the drafter of the policy, which is Lemhi County. *Federal Nat. Mortg. Ass'n v. Hafer*, 351 P.3d 622, 631- 32 (Idaho 2015) ("Ambiguities in a contract of adhesion should be construed against the drafter").

employee to "unequivocally renounce[] a right to anything other than at-will employment." *See, e.g. Harms*, 2013 WL 791452, * 12, n. 9.

While there is an acknowledgment present in this case, the acknowledgment does not specifically require that Lemhi County employees "unequivocally waive or renounce a right to anything other than at-will employment." In fact, the term "at will" is nowhere present in the acknowledgment form.

In short, there are facts in the record sufficient to support a finding that Plaintiff had a reasonable expectation in her continued employment with Lemhi County.

### B.    *Due Process*

The essential requirements of due process are notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). In *Loudermill*, the United States Supreme Court concluded that a public employee dismissable only for cause was entitled to a *limited* hearing prior to termination, to be followed by a comprehensive post-termination hearing. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). The pretermination hearing "should be an initial check against mistaken decisions- essentially, a determination of whether there are reasonable grounds to believe the charges against the employee are true and support the action." *Loudermill*, 470 U.S. at 545-46 (as quoted in *Gilbert*).

Pretermination process requires only oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *Gilbert*, 520 U.S. at 930. Furthermore, due process is flexible and calls for such procedural protections as the situation demands. *Id.* In those situations in which a

government actor must act quickly or where it would be impracticable to provide predeprivation process, postdeprivation process may satisfy the due process clause. *Id.*

To determine what process is constitutionally due, courts general balance three factors: (1) the private interest affected by official action; (2) the risk of an erroneous deprivation and the probable value of additional or substitute procedural safeguards; and (3) the government's interest. *Id.* at 931.

In this case, on December 4, 2013, Plaintiff was provided with a pretermination Notice of Proposed Personnel Action- Termination and Notice of Suspension without Pay Pending Decision. (Dkt. 15-8, pp. 13-15.) This Notice states that Plaintiff's termination was related to: (1) engaging in abusive conduct to fellow employees; (2) falsifying time sheets on specified days; and (3) engaging in criminal conduct by accepting property belonging to Lemhi County, specifically identified as tires placed on her vehicle. (Dkt. 15-8, p. 14.)

In addition, Plaintiff was provided a pretermination hearing on December 17, 2013. (Dkt. 16). At the hearing, Plaintiff was represented by counsel and was provided an opportunity to present evidence she had to rebut the charges against her. (Dkt. 16.) Plaintiff's hearing lasted one hour. *Id.* Plaintiff, her attorney, and her husband were allowed to speak on her behalf. *Id.*

Plaintiff argues these protections were not sufficient because: (1) she was not provided with an explanation of the evidence against her before the pretermination hearing, (2) she was not provided a post-termination hearing, and (3) the decision-makers at her due process hearing were biased against her. None of these arguments is ultimately persuasive.

First, Plaintiff argues that she was entitled to an explanation of the evidence against her *before* the pretermination hearing. Instead, she was "ambushed . . . with a large stack of documents at the hearing." (Dkt. 20, p. 18.)

The Court disagrees. The presentation of evidence at the December 17, 2013 pretermination hearing and availability of posttermination proceedings as described in the LCPP is sufficient due process. The pretermination notice identified the specific days upon which it was alleged Plaintiff was absent from work. In addition, at the pretermination hearing, Plaintiff was made aware of the evidence supporting this conclusion. If Plaintiff wished to rebut or otherwise address this evidence in a different manner, then she could have requested a posttermination hearing to address this evidence.

Second, the County's failure to conduct a posttermination hearing does not constitute a failure of due process because Plaintiff did not request one. The LCPP specifically allows for a posttermination hearing at the employee's request for the purpose of raising issues related to unlawful discrimination or for the purposes of name-clearing. (Dkt. 15-7, pp. 41-43.) It is undisputed that Plaintiff signed an acknowledgment indicating that she had read the LCPP. Because the LCPP provided for a posttermination hearing and Plaintiff failed to request one, she cannot argue she was deprived of one. *See Holscher v. Olson*, 2008 WL 2645484, *12 (E.D. Wash. Jun. 30, 2008) (employee who fails to request posttermination hearing cannot later claim to be deprived of one); *Correa v. Nampa School Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) ("where adequate administrative

procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing.")[4]

Third, Plaintiff has failed to set forth sufficient evidence to create a genuine dispute of fact concerning the impartiality of the decision-makers involved in her pretermination hearing and discharge. Due process requires a hearing before an impartial tribunal. *Clements v. Airport Authority of Washoe Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995). Policy makers with decision-making power, such as the Lemhi County Commissioners, enjoy a presumption of honesty and integrity. *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 492 (1976). Mere prior involvement in or familiarity with the events involving a contested decision is insufficient to overcome this presumption "in the absence of a showing that [the decisionmaker] is 'not capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id.* at 493 (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). To overcome an administrative board's presumption of honesty, a plaintiff must demonstrate that the tribunal was actually biased, or that there was an impermissible appearance of bias. *Withrow v. Larkin*, 421 U.S. 35, 47, 55 (1975).

In this case, Plaintiff argues that the decisionmakers were biased, because the Lemhi County prosecutor participated in the Commissioner's executive session to determine whether to terminate Plaintiff's employment. (Dkt. 20, p. 19.) Plaintiff argues this was

---

[4] Plaintiff's failure to request a posttermination hearing does not preclude her from asserting a due process claim altogether. In this instance, it simply precludes her from arguing that she did not have an opportunity to address the evidence relied upon by the Commissioners when deciding to terminate her employment.

impermissible because the Lemhi County prosecutor was primarily responsible for directing the investigation of Plaintiff and precipitated the notice recommending Plaintiff's termination. (Dkt. 20, p. 19.) In addition, Plaintiff argues that Jacovak demonstrated bias when he testified that he viewed Plaintiff's case as black and white, largely because he believed Plaintiff knew about Jack Miller's criminal misconduct and he discounted any testimony from Jack Miller. (Dkt. 20, p. 19.)

The Court finds this evidence insufficient to overcome the board's presumption of honesty. It was the Commissioners' responsibility to determine the witness' credibility and issue a decision. There is no evidence that the Commissioners turned this responsibility over to the prosecutor. Furthermore, the Lemhi County prosecutor wore two hats in these proceedings. On the one hand, the prosecutor engaged in an investigation. On the other, he served as an agent of the Commissioners for the purpose of advising them on their decision. These facts alone are not sufficient to demonstrate the appearance of or actual bias.

Further, Plaintiff has not shown that the Defendant Commissioners actually prejudged the issues specifically involved in their decision to terminate her employment; i.e., timecard fraud and abusive treatment of co-workers. The Commissioners had prior knowledge of Mr. Miller's criminal misconduct and were free to accept or discount his credibility as a witness based on that or any other experience. However, prejudging Mr. Miller's credibility as a witness is distinct from prejudging the Plaintiff.

In addition, while the Commissioners ultimately decided to terminate Plaintiff's employment, they rejected finding that Plaintiff knew or participated in her husband's

criminal conduct. This demonstrates a degree of independent judgment and unbiased consideration of the evidence.

Accordingly, the Court finds that Plaintiff has failed to provide sufficient evidence to demonstrate a dispute of fact concerning the bias of the Defendant Commissioners who decided to terminate her employment.

### C. *Qualified Immunity*

The doctrine of qualified immunity protects state actors from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). It establishes immunity from suit rather than a defense to liability. *Id.*

Resolving qualified immunity claims involve two steps. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). First, a court must decide if the alleged facts make out a violation of a constitutional right. *Id.* at 201. If this step is satisfied the court must then decide whether the right at issue was "clearly established" at the time of the defendant's misconduct. *Id.*

In this case, the Court did not find a constitutional violation. Accordingly, there is no need to determine whether Plaintiff's constitutional rights were "clearly established" at the time of decision-making.

## CONCLUSION

In sum, there are genuine disputes of material fact that preclude summary judgment on Plaintiff's claims of hostile work environment, gender discrimination, and retaliation.

However, there are no disputes of fact that would preclude judgment as a matter of law in favor of the Defendant on Plaintiffs' state and federal procedural due process claims.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Dkt. 15) is **GRANTED IN PART** and **DENIED IN PART** as stated herein.

A **telephonic status conference** with Staff Attorney Kira Dale is set for **July 6, 2017**, at **9:00 a.m.**, for the purpose of discussing a trial setting and any related filing deadlines. **Plaintiff** must initiate the conference call by placing it to (208) 334-9256 and must have all appropriate parties on the line.

SO ORDERED.

DATED: June 13, 2017

Edward J. Lodge
United States District Judge