UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| NOVA MILLER, | Case No. 4:15-cv-00156-DCN |
|---|---|
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| LEMHI COUNTY, a political subdivision of the State of Idaho; JOHN JAKOVAC, in his official and individual capacity; RICHARD SNYDER in his official and individual capacity; and ROBERT COPE, in his official and individual capacity, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on five Motions in Limine filed by Plaintiff Nova Miller in anticipation of a seven-day trial scheduled to begin on April 23, 2018. Dkts. 42-46. As explained below, the Court finds good cause to GRANT IN PART some of the motions, DENY some of the motions, and postpone ruling on the merits of some of the motions until trial.

## II. BACKGROUND

The factual background of this case was set forth in the Court's Memorandum Decision and Order granting in part and denying in part Defendants' Motion for Summary Judgment. Dkt. 28. The Court incorporates that background in full by reference.

## III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)). Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. ANALYSIS

*A. Jack Miller's Criminal Record*

In her first motion in limine, Miller seeks to exclude from trial evidence of Jack Miller's criminal conduct. Jack Miller is Miller's husband and prior supervisor. In October 2013, when Jack Miller was the Lemhi County landfill manager, a landfill employee reported to the Lemhi County Treasurer that he suspected Jack Miller had placed tires purchased by the County onto Miller's vehicle. The County Sheriff's Office began investigating and, shortly thereafter, Jack Miller admitted that he purchased the

tires with County funds and had retained cash received from recycling materials for personal use. On November 6, 2013, the County terminated Jack Miller based on the theft of County money and property.[1] On April 17, 2014, Jack Miller was arraigned in state district court in Lemhi County on criminal theft charges. On August 21, 2014, the State of Idaho and Jack Miller entered into a Plea Agreement under which he pled guilty to grand theft. On November 20, 2014, the state court entered an Order Withholding Judgment and Order of Probation.

At the summary judgment stage, the Court struck from the record written evidence of Jack Miller's criminal information and withheld judgment presented by the County under Federal Rule of Evidence 401, because the evidence lacked relevance, and under Federal Rule of Evidence 404(b), because it was impermissible character evidence.[2] Miller now asks the Court to reaffirm this ruling and exclude evidence of Jack Miller's criminal conduct from trial for four reasons: (1) lack of relevance under Rule 401; (2) impermissible character evidence under Rule 404(b); (3) improper impeachment evidence under Rule 609; and (4) prejudice/confusion of the issues under Rule 403.

---

[1] The County also investigated whether Miller was involved in the theft. The County ultimately terminated Miller in December 2013. The County did not list Miller's involvement in the theft as one of the reasons for termination. Thus, it appears the investigation did not yield evidence sufficient to link Miller to the theft.

[2] To be clear, Judge Edward Lodge referred the Motions to Strike to Magistrate Judge Candy Dale. Dkt. 18. Judge Dale granted the Motion to Strike the criminal records under Rules 401 and 404. Dkt. 27. Judge Lodge then adopted Judge Dale's decision in his Memorandum Decision and Order on the County's Motion for Summary Judgment. Dkt. 28, at 7. Judge Dale noted that the Court will have to consider separately whether the records will be admissible at trial. Dkt. 27, at 10 n.7.

The County has made clear that it "has no intention of challenging Magistrate Dale's F.R.E. 401 and 404 rulings." Dkt. 51, at 2. However, the County argues that if Jack Miller testifies at trial the Court should allow it to present evidence of his criminal conduct under Federal Rule of Evidence 609. This Rule provides, in relevant part:

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> >
> > > (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> >
> > . . .
> >
> > (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

Fed. R. Evid. 609.

Miller first argues that any evidence of Jack Miller's criminal conduct is inadmissible under Rule 609 because, although he pled guilty, the judgment against him was withheld, and under the Idaho Rules of Evidence, "[e]vidence of a withheld judgment or a vacated judgment shall not be admitted as a conviction." I.R.E. 609(c). This argument requires the Court to consider whether Idaho Rule of Evidence 609 applies in this case. Generally, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence 'ordinarily govern in diversity

cases.'" *Id.* (citation omitted). However, there are important exceptions to this general rule:

> [T]he Federal Rules do not supplant "all state law evidentiary provisions with federal ones." Rather, state evidence rules that are "intimately bound up" with the state's substantive decision making must be given full effect by federal courts *sitting in diversity*. Moreover, some state law rules of evidence in fact serve substantive state policies and are more properly rules of substantive law within the meaning of *Erie*.

*Id.* (internal citations omitted) (emphasis added). Significantly, this Court is not sitting in diversity. This Court has federal question jurisdiction over the federal claims and supplemental jurisdiction over the state law claims. 28 U.S.C. §§ 1331, 1367; Dkt. 1, ¶ 2. Thus, the Federal Rules of Evidence apply in this case, *see* Fed. R. Evid. 101, and Idaho Rule of Evidence 609 does not bar the County from presenting evidence of Jack Miller's withheld judgment.[3]

The Court notes that, in light of Idaho Rule of Evidence 609(c), this Court has stated that it will "exclude evidence of a charge resulting in a withheld judgment, pursuant to Rule 609, where the charge does not inherently call into question the witness's veracity or honesty." *United States v. Elias*, No. CR 98-00070-E-BLW, 1999 WL 1204529, at *7 (D. Idaho Apr. 20, 1999). In *Elias*, the Court considered whether to admit evidence of a witness's withheld judgment on a drug conviction after the witness

---

[3] The Court notes that there is a strong argument to be made that Idaho Rule of Evidence 609(c) would apply in federal court. The withheld judgment is a mechanism under which a court may "spare [a] defendant, particularly a first time offender, 'the burden of a criminal record.'" *State v. Branson*, 128 Idaho 790, 793, 919 P.2d 319, 322 (1996). Honoring this evidentiary rule would appear to serve a substantive Idaho state policy of giving select criminal defendants a second chance at a clean record.

MEMORANDUM DECISION AND ORDER –5

completed probation and had the charges against him dismissed. This case is markedly different. Jack Miller has not completed probation and, as explained below, although the conviction did not require as an element proof of a dishonest act or false statement, the Court cannot conclude that "the charge does not call into question [Jack Miller's] honesty."

Before proceeding to an analysis of Federal Rule of Evidence 609, the Court notes that if it finds the evidence of Jack Miller's criminal conduct admissible under Rule 609(a)(1)(A), the Court must balance that finding against the principles set forth in Rule 403. However, "[u]nder Fed. R. Evid. 609(a)(2), impeachment evidence of a prior criminal conviction involving 'dishonesty or false statement' is automatically admissible, and the rule affords the trial court no discretion to weigh its prejudicial effect." *Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 811 (9th Cir. 1991). The Court, therefore, first addresses whether the evidence would be admissible under 609(a)(2), as this determination could be dispositive.

Under 609(a)(2), evidence of a witness's past crimes must be admitted only "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Jack Miller pled guilty to grand theft as defined by Idaho Code 18-2403(1) and 18-2407(1)(b)(8). Dkt. 15-8, at 26. Under 18-2407(1)(b)(8), "[a] person is guilty of grand theft when he commits a theft as defined in this chapter and when" the theft was part of a common scheme or plan which aggregated in the theft of more than one thousand dollars in value. Under 18-2403(1), "[a] person steals property and commits theft when, with intent to

deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." Based on these definitions, it is not readily apparent that the elements of the grand theft, to which Jack Miller pleaded guilty, required proving, or Jack Miller admitting to, "a dishonest act or false statement." *See also United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) ("Generally, crimes of violence, *theft crimes*, and crimes of stealth do not involve 'dishonesty or false statement' within the meaning of rule 609(a)(2). Although such crimes may indicate a lack of respect for the persons or property of others, they do not 'bear directly on the likelihood that the defendant will testify truthfully.'" (internal citations omitted) (emphasis added)). Rule 609(a)(2), therefore, does not compel the admission of evidence of Jack Miller's criminal conduct.

The Court, therefore, must addresses 609(a)(1)(A). "Grand theft committed in a manner prescribed" by 18-2407(1)(b)(8) "is a felony punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison for not less than one (1) year nor more than fourteen (14) years, or by both such fine and imprisonment." Idaho Code § 18-2408(2)(a). Thus, because this crime "was punishable . . . by imprisonment for more than one year," evidence of Jack Miller's criminal conviction "must be admitted, subject to Rule 403." Fed. R. Evid. 609(a)(1)(A).

Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Miller argues the County is only attempting to use Jack

Miller's criminal record "for the purpose of painting Plaintiff as an accomplice to her husband's crime and implying that she similarly committed theft via timecard fraud." The Court agrees that, if used in this way, the evidence could mislead the jury and prejudice Miller. Nevertheless, a felony conviction is relevant to a witness's credibility. Accordingly, the Court will permit the admission of evidence of Jack Miller's criminal conduct (if he testifies at trial) with some limits. The parties may not present evidence or ask questions about Jack Miller's criminal conduct that would imply or insinuate Miller's involvement in the theft in any way. Miller also asserts that if the County presents evidence of Jack Miller's criminal conduct at trial, she will dispute whether he was fairly charged.[4] Such questions will certainly cause jury confusion and the Court will not permit them under Rule 403. Thus, the Court will allow the introduction of the fact and date of the conviction, and any relevant details not involving Miller. However, the Court will delineate the exact boundaries of these limits at trial.

*B. Hearsay Evidence*

In her second motion in limine, Miller seeks to exclude from evidence several written statements from Lemhi County employees, specifically from Scott Duncan, Dean Jensen, Darlene Welch, Tom Winters, and Augustus "Gus" Thoreson. The County alleges that it terminated Miller, at least in part, because she committed timecard fraud. Miller denies the allegations of timecard fraud and alleges that the above listed County employees obtained her past timecards (in violation of County policy) and then met

---

[4] Miller alleges that other County employees committed similar acts to those that formed the basis of Jack Miller's conviction, but none of these other employees were charged.

MEMORANDUM DECISION AND ORDER –8

together to coordinate false statements they would make regarding Miller's timecards in order to get her fired. The employees apparently made statements, including handwritten statements, regarding Miller to the County during an investigation into Miller's work conduct. Miller seeks to exclude these statements from trial as inadmissible hearsay.

"In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002). Hearsay is a statement, other than one made by the declarant "while testifying at the current trial or hearing," that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

The County admits that the statements are hearsay if the County admits them to prove the truth of the matter asserted in them, i.e. that Miller falsified her timecards. However, the County asserts that it will not offer the employee statements for the truth of the matter asserted therein. Rather, the County asserts it plans to introduce the statements to show that it had a legitimate, non-retaliatory reason for terminating Miller. Lemhi County also vaguely asserts that "[t]here may be other reasons for admitting the statements at trial which cannot yet be foreseen." Dkt. 51, at 5.

Even if the statements are collusive, the Court agrees that the written employee statements are not hearsay if the County offers them to show it had a legitimate reason for terminating Miller. Such evidence is relevant to the County's defense against Miller's discrimination and retaliation claims. Accordingly, the Court will admit the statements if the County offers them for such purpose. However, a contemporaneous, limiting

instruction to the jury may be required to avoid confusion and prejudice. *See Bakst v. Cmty. Mem'l Health Sys., Inc.*, No. CV0908241MMMFFMX, 2011 WL 13214315, at *34 (C.D. Cal. Mar. 7, 2011) ("When evidence is admitted for a reason other than to prove its truth, a limiting instruction is appropriate.") (collecting cases). The Court withholds ruling on whether the County may admit the employee statements for any other reason. However, the Court notes Lemhi County appears to have waived any defense that the statements fall under the definition of non-hearsay set forth in Federal Rule of Evidence 801(d) or under a hearsay exception set forth in Rules 803, 804 and 807.

*C. Miller's Alleged Abusive Conduct*

In her third motion in limine, Miller seeks to exclude from trial evidence that she "engaged in abusive conduct to fellow employees." On Miller's termination notice, the County listed two reasons for Miller's termination: (1) she "[e]ngag[ed] in abusive conduct to fellow employees," and (2) she falsified her timecards. Dkt. 15-8, at 19. Miller asserts that, in their depositions, the County Commissioners clarified that the timecard fraud was the true basis for termination. For example, at one point in his deposition, Commissioner John Jakovac stated that Miller's accusation about her co-workers mistreating her and her co-workers' accusations about Miller's abusive conduct carried little weight in the decision to dismiss Miller. Dkt. 47-1 at 5-6. Based on this testimony, Miller argues the County "should be barred from putting on any evidence or testimony regarding the allegations of abusive conduct as a basis for Plaintiff's termination." Miller also asserts that barring this evidence will "streamline the testimony and allow the heart of the issue"—the alleged timecard falsification—"to be the focus."

MEMORANDUM DECISION AND ORDER –10

The County challenges Miller's characterization of the Commissioners' deposition testimony. The County asserts that "a more accurate characterization of the testimony is that some of the Commissioners implied that they would not have discharged plaintiff based on the abusive conduct allegations alone." Moreover, the County argues that because Miller's "cat's paw" theory of the case calls the motives of County employees into question, the Court should allow those employees to testify about all of the factors motivating their complaints about Miller, including both the alleged timecard falsification and abusive conduct.

Although it is not entirely clear, it appears Miller bases her argument for excluding the evidence on its lack of relevance and/or probative value. *See* Fed. R. Evid. 403 (permitting courts to "exclude relevant evidence if its probative value is substantially outweighed by," among other things, "confusing the issues" or "undue delay"). To determine the relevance and/or probative value of the testimony, the Court must take a closer look at Miller's cat's paw theory.

"In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006) (cited in *Poland v. Chertoff*, 494 F.3d 1174, 1182 n.5 (9th Cir. 2007)). In such a situation, "if [an employee] performs an act motivated by [discriminatory] animus that is intended by the [employee] to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v.*

*Proctor Hosp.*, 562 U.S. 411, 422 (2011); *Poland*, 494 F.3d at 1182. In this case, Miller alleges that her biased co-workers, motivated by their bias against her, fabricated a story about her falsifying her timecards to get her fired. Miller argues the false story about her falsification of timecards is the proximate cause of her termination.

The evidence of Miller's alleged abusive conduct is at least somewhat relevant because, as evidenced by the termination notice, the County factored it in, if minimally, to its decision to terminate Miller. This evidence could weaken Miller's case that the allegations of timecard fraud were the proximate cause of Miller's termination. *See* Fed. R. Evid. 401 and advisory committee notes; *but see Staub*, 562 U.S. at 420 ("[I]t is common for injuries to have multiple proximate causes."). Miller has requested, and may be entitled to, a mixed-motive instruction. *See Shelley v. Geren*, 666 F.3d 599, n.2 (9th Cir. 2012) ("Under such instructions, Title VII plaintiff shows that discrimination was a 'motivating' or a 'substantial' factor in the employer's action, the burden of persuasion would shift to the employer to show that it would have taken the same action regardless of that impermissible consideration."). In mixed-motive cases, employers must be given an opportunity to present evidence on the other factors that may have motivated the adverse employment action at issue. The evidence of Miller's alleged abusive conduct may have little probative value if the allegations carried little weight in the Commissioners' decision to terminate Miller. However, it is not clear to the Court that evidence of the abusive conduct will confuse the jury or cause undue delay as mixed-motive cases routinely involve the presentment of evidence on multiple factors that may

have motivated the employer. However, the Court will be in a better position to address any delay caused by the presentation of *excessive* evidence on this point during trial.

Finally, Miller has failed to cite any case presenting a similar issue. In the absence of legal authority to the contrary, the Court will deny this motion in limine.

*D. Spoliation and Adverse Inference Instruction*

In her fourth motion in limine, Miller asks this Court to give a jury instruction on spoliation of evidence. Miller contends that Lemhi County has lost pieces of evidence that would support her version of events—specifically, that County employees colluded to create a story about Miller (that she committed timecard fraud and engaged in abusive behavior) that would cause the County to terminate her. In particular, Miller claims Lemhi county lost or destroyed (1) notes that Scott Duncan allegedly took contemporaneously with the events giving rise to this case; (2) Dean Jensen's investigation file that allegedly contains contemporaneous notes from Lemhi County employees; (3) typed and handwritten notes Miller kept in a file folder at work regarding her coworkers' misbehavior; and (4) spare pants Miller kept at work in case she needed to change because her coworkers refused to cover her while she took a bathroom break.

Federal trial courts have the inherent discretionary authority to make appropriate evidentiary rulings and to levy sanctions in response to the destruction or spoliation of relevant evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Sanctions for spoliation include dismissal of claims, exclusion of evidence, and adverse jury instructions in which the jury is informed that it may presume that the destroyed evidence, if produced, would have been adverse to the party that destroyed or failed to

MEMORANDUM DECISION AND ORDER –13

preserve it. *See Unigard Security Ins. Co. v. Lakewood,* 982 F.2d 363, 368–70 (9th Cir. 1992). "A party seeking sanctions for spoliation bears the burden of establishing that the opposing party (1) destroyed relevant evidence and (2) had an obligation to preserve the evidence when it was destroyed or altered." *Harmon v. United States by & through Bureau of Indian Affairs*, No. 4:15-CV-00173-BLW, 2017 WL 1115158, at *2 (D. Idaho Mar. 24, 2017) (citing *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). "An obligation to preserve attaches when a party knows or should reasonably know that the evidence is potentially relevant to litigation." *Id.* (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). A finding of bad faith is not required before a Court may impose spoliation sanctions. *See Glover,* 6 F.3d at 1329. "Factors to be considered when determining the severity of the sanction to impose against a party for failure to preserve evidence include: (1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and (3) what is required to cure prejudice." *Miller v. Four Winds Int'l Corp.*, 827 F. Supp. 2d 1175, 1179 (D. Idaho 2011) (citation omitted).

The parties dispute nearly every aspect of the disappearance of these four pieces of evidence. As to the Duncan notepad, it appears Duncan provided a copy of the notepad to the County's prosecuting attorney and retained a copy for himself. Miller maintains that she requested the notepad during discovery, and that the County failed to produce it, claiming that neither it nor Duncan had been able to locate the notepad. Lemhi County asserts, in contrast, that Duncan will testify that copies of the notepad were produced during discovery and he was questioned about them during his deposition. Miller, in turn

asserts that the "copy" that was produced is a "handwritten copy" and thus an insufficient replica of the original notepad.

As to the Jensen notes, during his deposition, Jensen stated that he "had a big packet" that he left "at Ken's office" that had "disappeared." Dkt. 47-5, at 2. In contrast, in its response brief, Lemhi County states that it "clarified through a supplemental discovery response that the entire content of that file was provided to plaintiff in discovery . . . prior to Jensen's deposition." Dkt. 51, Dkt. 8. Lemhi County's supplemental answer states:

> A diligent search has been made for the file that Dean Jensen testified was in Ken Boese's office. In addition to pages 23-38 and pages 59-60 of Exhibit OOO, Dean Jensen believes, to the best of his recollection, that the only other materials that were in the file were copies of the other employees' statements, copies of which were produced with Defendants' Initial Disclosures. I have an email and call into Dean to verify this.

Dkt. 55, at 5. Miller argues that the production of "nonconsecutive alleged pages" of the file based on "Jensen's alleged recollection of what was in" the file is not enough, and a spoliation instruction is required to cure the prejudice she will suffer from the failure to produce the original file.

As to Miller's notes and pants, Miller asserts that the County destroyed them at some point after November 1, 2013—when it suspended her—but before it gave her an opportunity to retrieve her personal belongings. The County disputes the existence of the notes and points out that only Miller and her husband claim to have knowledge of the existence of the notes. The County also contends that "no such notes were found when the scale house was searched shortly after" it suspended Miller and that the evidence

equally supports a conclusion that Miller or her husband destroyed the notes. Dkt. 51, at 7.

The County also disputes the existence of the pants. It contends that it only found three pairs of children's pants and that Miller would have no need for the pants because it placed a port-a-potty at Miller's worksite three years before it discharged Miller. *Id.* Miller responds that her stature is so slight she must wear children's clothing and that the children's pants that County employees found were in fact hers.

It is well settled that "[e]ach party is . . . entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence." *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (quotation marks and citation omitted). At this point, it is not clear what evidence the parties will present at trial and whether the evidence will support a spoliation instruction. Thus, after the close of evidence at trial, the Court will decide whether such an instruction has a foundation in evidence and whether a spoliation instruction is warranted.

*E. Present Testimony of Unavailable Witnesses via Videostream and Deposition*

Miller "foresees the possibility of calling two impeachment witnesses to challenge and contradict evidence" that Defendants may present at trial. Dkt. 46-1 at 2. However, these two witness reside in Salmon, Idaho, which is more than 100 miles from the Pocatello Courthouse. Accordingly, Miller asks the Court for leave to present the testimony of these two witness via videostream at trial.

Under Federal Rule of Civil Procedure 43(a), "for good cause shown in compelling circumstances and upon appropriate safeguards, [a court may] permit

presentation of testimony in open court by contemporaneous transmission from another location." Miller argues good cause exists in these circumstances because it would cost these individuals great time and expense to travel and stay in Pocatello for the duration of the seven-day trial. Further, it is not yet clear what evidence and witnesses Lemhi County will present at trial, so Miller does not know whether she will even have to call the impeachment witnesses. Miller maintains that she will be severely prejudiced in presenting her case if the Court does not allow her to present these impeachment witnesses.

For the reasons Miller has asserted, it appears, generally, that good cause exists to allow her to present the impeachment witnesses' testimony via videostream. Lemhi County has not responded to this motion. Instead, it appears Lemhi County is taking the position that this motion is pre-mature. Miller also has not filed a reply brief with regard to this motion. The Court agrees that this motion is somewhat premature as it is unclear whether Miller will need to call the witnesses at trial. It is also difficult for the Court to rule on this motion without knowing the identities of the witnesses and the subject of their testimony. The Court, therefore, withholds ruling on the merits of the motion until trial. However, the Court acknowledges that the parties will need to make some preparations if the Court were to permit the witnesses to testify via videostream. Accordingly, the Court notes that it is inclined to grant a renewed motion to present testimony via videostream if Miller establishes that the witnesses' testimony will impeach evidence that Lemhi County has presented at trial and is admissible under Federal Rule of Evidence 402.

Miller also asks the Court for leave to present the deposition of certain unavailable witnesses in lieu of live testimony. Federal Rule of Civil Procedure 32(a)(4) provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . . that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition[.]" Miller has provided a list of eight witnesses, all of whom appear to live in Salmon, Idaho. These witnesses cannot be compelled to appear and testify at trial because they reside more than 100 miles from the Pocatello Courthouse. Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]"). Presumably, these witnesses are adverse to Miller's case and will not consent to testify via videostream. Again, although the Court is generally inclined to grant the motion, the Court finds it is premature. The Court does not know which depositions Miller wishes to present or the content of those depositions. Thus, the Court will deny the motion as premature, but with the caveat that it is inclined to grant a renewed motion at trial.

## IV. ORDER

THE COURT HEREBY ORDERS:

1. Miller's Motion in Limine Re: Jack Miller's Criminal Record (Dkt. 42) is GRANTED IN PART and DENIED IN PART consistent with the above decision.

2. Miller's Motion in Limine Re: Hearsay Evidence (Dkt. 43) is DENIED.

3. Miller's Motion in Limine To Exclude Evidence of Alleged Abusive Conduct (Dkt. 44) is DENIED.

4. Miller's Motion in Limine: Re Spoliation and Adverse Inference Instruction (Dkt. 45) is DENIED AS PREMATURE. The Court will entertain a renewed motion at trial.

5. Miller's Motion to Present Testimony of Unavailable Witnesses Via Videostream and Deposition (Dkt. 46) is DENIED AS PREMATURE. The Court will entertain a renewed motion at trial.

DATED: March 2, 2018

_____
David C. Nye
U.S. District Court Judge